DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. A jury found William J. McClaskey, defendant below and appellant herein, guilty of rape in violation of R.C. 2907.02(A)(1)(b), felonious assault in violation of R.C.2903.11(A)(1), endangering children in violation of R.C. 2919.22(B) and kidnapping, in violation of R.C. 2905.01(A)(4).
 {¶ 2} Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR: *Page 2 
 "IN VIOLATION OF DUE PROCESS, THE GUILTY VERDICTS WERE ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY SENTENCING MR. McCLASKEY TO PRISON BASED ON FACTS NOT FOUND BY A JURY OR ADMITTED BY MR. McCLASKEY."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PLAIN ERROR BY SENTENCING MR. McCLASKEY TO SEPARATE PRISON TERMS FOR RAPE AND FELONIOUS ASSAULT WHEN THE TWO CRIMES WERE ALLIED OFFENSES OF SIMILAR IMPORT THAT SHOULD HAVE BEEN MERGED."
 FOURTH ASSIGNMENT OF ERROR:
 "TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO ARGUE THAT RAPE AND FELONIOUS ASSAULT WERE ALLIED OFFENSES OF SIMILAR IMPORT THAT SHOULD HAVE BEEN MERGED."
 {¶ 3} On December 12, 2005, Harrison Township paramedics received a dispatch that directed them to an apartment building at 99 Long Street in Ashville. When they arrived, Charlotte Hodge met them outside and informed them that her daughter (T.H. d/o/b 1-4-99) "couldn't breath very well." The paramedics entered the apartment and found both T.H. and Hodge's boyfriend, appellant, sitting inside.
 {¶ 4} Appellant told the paramedics that T.H. was having an asthma attack.[2] After seeing bruises around her neck and face *Page 3 
and blood on her underwear, however, the paramedics suspected sexual abuse. T.H. was taken to Children's Hospital in Columbus where she underwent surgery to repair a four millimeter tear on her vaginal opening.
 {¶ 5} On January 6, 2006, the Pickaway County Grand Jury returned an indictment that charged appellant with two counts of rape,[3]
felonious assault, endangering children, and kidnapping. Appellant pled not guilty to all offenses and a jury trial was held over several days in June 2006.
 {¶ 6} At trial, Ellen McManus, M.D., a Children's Hospital emergency physician, testified that the tearing of the victim's vaginal opening is "a very significant injury" and is typically seen only in a "fourth degree episiotomy" performed during child birth. Dr. McManus further testified that the injuries are consistent with a foreign object inserted into the child's vagina, although it is unclear whether that object was a penis or some other object.
 {¶ 7} Dr. McManus further detailed that T.H. had a "dilated" anus, which suggested that "possibly something" was inserted into her anal cavity. On cross-examination, however, Dr. McManus conceded that she was less confident that a foreign object was inserted into the victim's anus than she was about a foreign object inserted into the victim's vagina. Dilation of that sort, explained Dr. McManus, could be caused by constipation or chronic passing of large stools. *Page 4 
 {¶ 8} As to the marks and bruising on the victim's face, Dr. McManus diagnosed this as "petechiae," or burst blood vessels caused by pressure when the jugular vein is obstructed. The witness opined that the marks are consistent with the victim being strangled or smothered and are "absolutely inconsistent" with an asthma attack.
 {¶ 9} Charlotte Hodge testified that sometime during the morning of December 12, she awoke to screaming and observed appellant "sexually molest[ing]" her daughter. Specifically, Hodge stated that she observed appellant's penis in her daughter's vagina, but that she did not see appellant's penis in her daughter s anus.[4] Hodge further testified that she observed appellant's hands around her daughter's throat and, at one point, T.H. lost consciousness.
 {¶ 10} Max Larijani, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, testified that a vaginal swab of the child revealed no semen. Swabs taken from her thigh and abdomen, however, revealed semen. DNA tests performed on the semen could not exclude appellant as the source.
 {¶ 11} The jury found appellant guilty of all counts. The following month the trial court, pursuant to Crim.R. 29(C), granted a judgment of acquittal on count two. The court explained that count two was based on an alleged "anal rape" and *Page 5 
that insufficient evidence exists to sustain a conviction on that offense.
 {¶ 12} At sentencing, the trial court determined appellant to be a "sexually oriented offender," imposed a sentence of life imprisonment without parole on the rape charge, a sentence of eight years in prison for the felonious assault and child endangering charges, and ordered the sentences to be served consecutively. The court did not impose a sentence on the kidnapping charge because the court found the offense merged into the rape offense in count one of the indictment. This appeal followed.
 I {¶ 13} Appellant asserts in his first assignment of error that the guilty verdicts are against the manifest weight of the evidence. Although the assignment of error is couched in the plural, thus referring to the jury's verdicts on all charges, appellant's only argument in his brief concerns the rape charge. Accordingly, that is the issue to which we confine our analysis.
 {¶ 14} Generally, appellate courts should not reverse convictions on manifest weight of the evidence grounds unless it is clear that the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997), 120 Ohio App.3d 457, 473, 698 N.E.2d 440;State v. Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814. In the instant case, we are not persuaded that a manifest miscarriage of justice occurred. *Page 6 
 {¶ 15} R.C. 2907.02(A)(1)(b) proscribes engaging in sexual conduct with anyone less than thirteen years of age. "Sexual conduct" includes vaginal intercourse or the insertion of any object into a vagina. R.C.2907.01(A). Mark Hodge testified that his daughter, born January 4, 1999, was six years of age at the time of the incident. Dr. McManus testified that T.H. had a vaginal tear consistent with something being inserted into her vagina. Charlotte Hodge testified that she observed appellant's penis in her daughter's vagina. This evidence supports the jury's guilty verdict on the rape charge.
 {¶ 16} Appellant counters, however, that Hodge's testimony is "incredible" and that no one definitively proved what object was inserted into the child's vagina. We disagree with appellant. The weight to be given evidence, and the credibility to be afforded witness testimony, are issues that the trier of fact must determine. SeeState v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763; State v.Frazier (1995), 73 Ohio St.3d 323, 339, 652 N.E.2d 1000. A jury, as trier of fact, may believe all, part or none of the testimony of any witness who appears before it. See State v. Long (1998),127 Ohio App.3d 328, 335, 713 N.E.2d 1; State v. Nichols (1993), 85 Ohio App.3d 65, 76,619 N.E.2d 80. The rationale for this proposition is that a jury is in a better position to view witnesses and to observe their demeanor, gestures and voice inflections, and to use those observations to weigh witness credibility. See Myers v. Garson (1993), 66 Ohio St.3d 610, 615,614 N.E.2d 742; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273. Thus, appellate courts do not generally second guess juries on questions of *Page 7 
evidentiary weight and witness credibility. See State v. Vance, Athens App. No. 03CA27, 2004-Ohio-5370, at ¶ 10; State v. Baker (Sep. 4, 2001), Washington App. No. 00CA9.
 {¶ 17} In the case sub judice the defense capably attacked Charlotte Hodge's credibility. The defense brought up Hodge's conviction for complicity in these crimes and called into question her claims that T.H. screamed during the rape, despite neighbors testimony that they did not hear anything. The jury, however, obviously found Hodge's testimony credible concerning her account of appellant's rape of her daughter. Also, DNA tests found semen on the child. Further, appellant drew suspicion to himself during the incident by claiming that T.H. was having an asthma attack when that is not what occurred. Dr. McManus firmly refuted any claim that the child's injuries resulted from breathing difficulties. In view of this evidence, as well as evidence that T.H. did not have these injuries when she returned from visitation with her father the previous night, no reasonable person could claim that the jury lost its way and created a manifest miscarriage of justice such that appellant's guilty verdict must be reversed.
 {¶ 18} Likewise, we are not persuaded that the inability to specifically identify what object was inserted into the child's vagina renders the verdict infirm. Ohio law requires that the prosecution prove that something was inserted into the vagina; it does not require the prosecution to establish precisely what that "something" was. State v.Lee (Mar. 21, 1996), Franklin App. No. 95APA09-1129; State v. Wolf (Dec. 30, 1994), Lake App. No. 93-L-151. Dr. McManus testified that the child's injuries could have *Page 8 
only been caused by an object inserted in her vagina. Thus, a rape was proven.
 {¶ 19} For these reasons, we hereby overrule appellant's first assignment of error.
 II {¶ 20} Appellant's second assignment of error combines two arguments that challenge the constitutionality of appellant's sentences. First, appellant asserts that the trial court erred by imposing sentences based on facts that were neither admitted by him nor found by a jury. We disagree.
 {¶ 21} Appellant premises this argument on the court's recitation of his lengthy criminal background and comments about this "horrific" crime and that his perpetration "earned [him] every day" of his life sentence. Appellant contends that this is tantamount to citing R.C. 2929.14(B) (C) as authority for the sentence.[5] Likewise, he contends that the court, in essence, relied on 2929.14(E) to impose consecutive sentences.[6] Because these statutes were struck down as unconstitutional in State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856, at paragraphs one and three of the syllabus, appellant maintains that his conviction must be reversed and the case remanded. We find no merit whatsoever in this argument. *Page 9 
 {¶ 22} Appellate courts will vacate a prison sentence if that sentence appears to have been based on the statutory provisions ruled unconstitutional in Foster. See e.g. State v. Spence, Lawrence App. No. 05CA40, 2007-Ohio-2723, at ¶¶ 4-5; State v. Smith, Lawrence App. No. 06CA29, 2007-Ohio-2490, at ¶¶ 8-9. In our review of the sentencing hearing transcript in this case, we find no citation to unconstitutional statutes, nor do we find language that uses the wording of those provisions to suggest that the trial court relied on subsections R.C.2929.14 (B),(C) (E) as authority for the sentences. We, to the contrary, read the transcript as providing a detailed explanation for the imposition of those particular sentences. In Foster, the Ohio Supreme Court held that trial courts have full discretion to sentence a defendant within the statutory range. 2006-Ohio-856, at paragraph seven of the syllabus. In this case, the trial court explained its reasons for imposing the sentences that it chose to impose. Although the trial court was not required to do so, id., nothing in Foster prohibits trial courts from explaining its reasons for imposing particular sentences. In fact, courts should be commended for explaining their reasoning in determining appropriate sentences.
 {¶ 23} Appellant's second argument asserts that afterFoster, the trial court may only sentence appellant to minimum concurrent sentences. Any sentence greater than the minimum, appellant reasons, violates his rights under the Ex Post Facto Clause of Article I, Section 10 of the United States Constitution and the Due Process Clause of the Fourteenth Amendment. We disagree. *Page 10 
 {¶ 24} We have considered and rejected these arguments on several occasions. See State v. Bruce, Washington App. No. 06CA40,2007-Ohio-1938, at ¶ 6; State v. Henry, Pickaway App. No. 06CA8,2006-Ohio-6942, at ¶¶ 11-12; State v. Grimes, Washington App. No. 04CA17,2006-Ohio-6360, at ¶¶ 8-11. Other appellate courts have rejected them as well. See e.g. State v. Mallette, Cuyahoga App. No. 87984,2007-Ohio-715, at ¶¶ 40-47; State v. Lowe, Franklin App. No. 06AP-673,2007-Ohio-504, at ¶ 9; State v. Shield, Shelby App. No. 9-06-16,2007-Ohio-462, at ¶¶ 21-23; State v. Hildreth, Lorain App. No. 06CA8879,2006-Ohio-5058, at ¶ 10. Appellant cites nothing to prompt us to revisit this issue. Thus, we adhere to our previous rulings.
 {¶ 25} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 26} We jointly consider appellant's third and fourth assignments of error because they raise similar issues. Appellant contends that rape and felonious assault are allied offenses of similar import and that they should have merged into one offense for purposes of sentencing. Although appellant did not raise this issue at the sentencing hearing, appellant claims that (1) the issue constitutes plain error under Crim.R. 52(B), and (2) trial counsel provided him with constitutionally ineffective assistance by failing to raise this issue. We disagree with appellant.
 {¶ 27} Various courts have addressed this issue and have concluded that rape and felonious assault are not allied offenses of similar import. See e.g. State v. Jones (1992), *Page 11 83 Ohio App.3d 723, 724, 615 N.E.2d 713; State v. Chambers, Montgomery App. No. 21013, 2006-Ohio-985, at ¶ 67; State v. Gallagher, Morrow App. No. CA941, 2003-Ohio-3581, at ¶ 74. We have also come to the same conclusion. See State v. Hatton (Apr. 19, 1999), Pickaway App. No. 97CA34. The underlying premise to appellant's argument is that the "serious physical harm" requirement in R.C. 2903.11(A)(1) for felonious assault is the same as the serious physical harm requirement for receiving a life sentence for rape under R.C. 2907.02(B). The flaw in that premise is that, notwithstanding the similar language in the two statutes, rape can be proven without showing serious physical harm and felonious assault can be proven without showing sexual conduct.Chambers, supra at ¶ 67 also see State v. Hay (Dec. 19, 2000), Union App. No. 14-2000-24 ("A rape may occur without a felonious assault."). Thus, the two crimes are not allied offenses of similar import for purposes of R.C. 2941.25.
 {¶ 28} Therefore, because this issues has no merit, trial counsel cannot be deemed constitutionally ineffective for the failure to raise it at trial. See State v. Hilyard, Vinton App. No. 05CA598,2005-Ohio-4957, at ¶ 31; In re Carter, Jackson App. Nos. 04CA15 
04CA16, 2004-Ohio-7285, at ¶¶ 41; State v. Knott, Athens App. No. 03CA30,2004-Ohio-5745, at ¶¶ 35.
 {¶ 29} Accordingly for these reasons, we hereby overrule appellant's third and fourth assignments of error.
 {¶ 30} Having reviewed all of the errors assigned and argued in the briefs, and finding merit in none of them, the judgment of the trial court is hereby affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. Kline, J.: Concur in Judgment Opinion
[2] Evidence adduced at trial shows that T.H. has asthma or other breathing problems that necessitate the administration of "breathing treatments."
[3] The rape charge in count one was premised on an alleged vaginal rape. The rape charge in count two was premised on an alleged anal rape.
[4] At the time of the trial, Charlotte Hodge was awaiting sentencing on her conviction(s) for complicity in these crimes. Although Hodge denied the accusations, various witnesses testified that Hodge initially blamed the sexual assault on the victim's natural father from whose residence she had returned the night before. The natural father, Matthew Hodge, is now the custodial parent of TH.
[5] R.C. 2929.14(B) (C) required the shortest allowable prison terms for offenses unless, inter alia, the offender had previously served prison time and the offense was the "worst form of the offense."
[6] R.C. 2929.14(E) required multiple prison terms to be served concurrently unless, inter alia, consecutive sentences were necessary to protect the public and were not disproportionate to the seriousness of the crime.
 *Page 1